Good morning, Your Honors. Wesley Wakeford for the appellants, John and Gary Champagne. May it please the Court. Please proceed. Pardon me? You may proceed. Oh, thank you, Your Honor. Your Honor, there are two main points that I would like to cover and some additional points following, depending on how much time I have. But the primary issues with this case are the fact that the district court did not view the facts in the light most favorable to a non-moving party and, in fact, adopted the characterization of facts that was set forth by the defendants. And, secondly, the characterization of the constitutional claim that the plaintiffs and appellants put forth at the district court was also distorted by the defendants. Again, it was a gross mischaracterization of their true claims. Well, I'm more interested in the second and the first, because I think we have the facts under some understanding, but I would really like to understand your legal theory, because I don't understand it. Okay. Certainly. As the Case Action Apartments, which is cited in our briefs that came from this Court, states, there is a right to own and manage property in any legitimate manner. In the State of California, part of management of property, if you have to remove a tenant in the State of California, you cannot use self-help, you must use the unlawful detainer process, which necessarily requires that you go to State court and bring an unlawful detainer action. So essentially you can go to State court and you can allege a violation of the lease, which is what you did in your first cause of action, which was the only cause of action that was actually ever before the Court because the second was thrown out. That's correct. And so what's your problem? I'll stop you. What's my problem? Well, it is the fact that the first cause of action, while the second cause of action was thrown out, the first cause of action was also dependent upon – well, rather than saying it was dependent upon, it was actually affected by the misinformation, the false documents that were produced by the city, not only impacted the ability of the city, but actually affected the first cause of action, that is to say the documents the city, in some of the oral testimony produced by the city, represented an alternative reality, and in that alternative reality – What constitutional right did you have to what? To evict the tenant without fraudulent interference by the city in the unlawful detainer action, that they produced evidence that was integral to the unlawful detainer action that was false, knowingly false. Well, it really wasn't integral. It was only because you went and filed essentially a charge – or your client went and filed a charge against yourself, himself, or asked for an order against himself because he was the owner of the property. I mean, he could have got ahead with that first, as I understand it, with that first cause of action, and he could have put out his own evidence that this violated the codes, and he didn't need the city at all. He didn't need the city for anything. That's absolutely correct, Your Honor. Okay. Unfortunately, what did transpire is that there was a breach of the lease, cause of action brought in, first cause of action. There would be no complaint by the appellants and plaintiffs if the city had never been involved. But they got the city involved. That's true. They did get the city involved. But that doesn't change the fact that the city could have chosen to act or not to act. But once it chose to act, it had to do so honestly and not do so in a manner in which they're producing false documents that destroy the unlawful detainer case. So you're right. The plaintiffs could have moved forward and prevailed in the action. Unfortunately, the decision was made to verify. There was a question of whether or not there was a lot of dispute about what exactly this condition in the garage was. It seemed prudent to bring in the city inspectors to render an opinion about that. Unfortunately, once this opinion was rendered, a number of things occurred where the city could have asked the appellant to do something. But they did, and they did. So they destroyed both causes of action, not just the second. Is the constitutional right you're urging now one of denial of access to the court? Absolutely. Or distortion of that? Or you're not pushing the right to control one's own property? It's both, Your Honor. I believe some of the ---- Oh? I believe it's both. I believe that there is a property right and the right of access to the courts. My understanding of the precedent states that that ---- Are you under a burden of demonstrating both? I think that they're very intertwined. I think they're one and the same, in fact, in this particular case. You didn't raise both of those constitutional rights in the district court, did you? I believe we did raise it. I don't know if it was stated in quite the manner I'm putting it now. But the claim was that there was a property right that was interfered with because the eviction ---- That one you raised in the district court, but not access to the courts. Right. But I believe ---- but my point is, is that the right of access to the court is subsumed in the right to manage your property. As I said, in California, you must go to court. You must have access to the court to manage your property when you must evict a tenant. That access to the court is a necessary component of ---- Well, nobody stopped you from going and filing a suit in state court, did they? Again, I think that there's legal precedent that states that you must have meaningful access to the court. Mere entrance into the courthouse is not enough. But does that mean that any time the ---- a witness, say, a governmental witness doesn't tell the truth, there's a Federal constitutional cause of action? In state court. In other words, in a state court, a governmental witness doesn't tell the truth. No, I believe that the law, the state of the law is ---- We're assuming your facts here, of course, which ---- but let's assume them for now. Okay? Thank you. No, I don't believe any time a city inspector or other government agent walks into court and lies that that's necessarily a constitutional ---- So what's the line? Why is this one? I believe that ---- well, the shocks the conscience is, I believe, the line. So you're claiming this is a substantive due process violation? It's a substantive due process violation. That doesn't have a lot to do with access to the court. One doesn't usually associate access to courts with shocking the conscience. I didn't understand the question. Why don't you stick to the issue you raised in the district court, which is the interference with your right to manage your property? Right. Is that also a substantive due process violation?  The claims, as I said, I believe they're intertwined. What we should really decide is whether the city inspector lying shocks your conscience. Among other things. But in this case, there's substantial evidence that this wasn't, you know, this wasn't a simple white lie. This is a very destructive lie. I didn't say a white lie. The city inspector tells a black lie. That shocks your conscience. In this case, it does. Okay. All right. I'm not saying that it shocked yours. I'm saying that's what we should decide. Oh. I don't know whether Felix Frankfurter meant, what, not a long time ago. Correct, Your Honor. The kind of things that shock our conscience. Not a lot shocks the conscience of the courts these days. Understood. However, I believe that shocks the conscience is more of a technical definition than it is a gut reaction. That's my understanding of the law. Is there a reason why correcting these failures of the process couldn't or can't be raised in the State court? It's an unusual thing for a Federal court to supervise what happens in a State court or to decide that the State court was in error. I agree that it is an unusual scenario. And in many cases, I believe it could be resolved in the State court. However, in this particular case, much of this false evidence that destroyed the Unlawful Detainer case was produced in the couple of days prior to the beginning of the trial and on the day of trial. And what they were faced with were multiple government documents as well as government witnesses who were willing to come in and misrepresent the state of reality. In fact, the state of reality was that there was a structure, an office built in a garage. If you're asserting the State court judgment was arrived at on the basis of fraud of some sort by the city and county of San Francisco, is there not a remedy within the State courts to overturn a judgment of that kind? There may be. I don't know. As I sit here right now, I don't know exactly what course that might be. But I also believe that this is a proper avenue. As I said, that this is a constitutional violation, in my opinion at least. Was there a 12b-6 motion in this case? No. There was not a 12b-6. All right. And there's an attorney's fees order against you as a plaintiff, against your own. That's correct. That's correct. And I believe, you know, even — you know, I think this case, if you are able to distill the — what I believe is a mountain of evidence that we — I think we can easily clear summary judgment, in my opinion. So it goes without saying that the standard for awarding attorney's fees against a civil rights plaintiff is — this, I believe, is extraordinary. I mean, it has to be the utmost frivolous kind of — How much in fees was awarded? I don't recall exactly, Your Honor. I believe it was somewhere in the neighborhood of 100 and — between 100 and 150. Was it basically everything that was asked for or some of what was asked for or what? It was everything that was asked for. I see. All right. Do you want to save some time for rebuttal?  I'll reserve some time. Thank you. Thank you. Thank you, Your Honor. It's Peter Keith for the appellees, Inspector Gates in the City and County of San Francisco. I think the Court's question as to what the right is, is a good question and it's the most important question in the case. But one thing that mystifies me about this case is why did it go on for so long? Why wasn't there a 12b6? Why couldn't this just have been resolved in a pleading? So that goes to the fees order. Your Honor, in — I mean, I just have to say that in our experience, 12b6 motions are very hard to win, even the most outrageous allegations in a complaint. But shouldn't you have concluded then from coming back and claiming a huge amount of fees for going through all sorts of depositions and so on if the case could have been resolved in a 12b6 motion? Your Honor, I'm not sure it could have been resolved on a 12b6 motion. There were a number of claims in the case and there were many factual allegations. I have to say that the reasonableness of the fee award was not appealed. The fee award was large because of — or was in the neighborhood of $150,000. And the reason it was — The fact that the fee award was appealed. The fee award was appealed, but the reasonableness of the fee award was — that's correct, Your Honor, not appealed. Well, the first question on the fee award, it is a civil rights case. And we don't normally award fees against plaintiffs in civil rights cases. You may not like the theory, but it doesn't seem to be the most outrageous type of suit. It may be based on a misconception of a constitutional right. But, you know, we have lots of civil rights cases brought by pro-pure plaintiffs who know even less about the law than some attorneys. Would you really want to see this as a kind of case we award fees against civil rights plaintiffs? Well, Your Honor, we agree that civil rights awards against plaintiffs and in favor of defendants are rare. But if there ever were a case, we think this is the one. Our office does not move for fees frequently. We recognize what the law is. In this case, we did. Here we have essentially a well-off business person who has a routine landlord — Well, you're not asking us to address the issue in terms of the asserted wealth of the plaintiff, are you? Well, Your Honor, one of the factors that the Court does take into account is whether the award of fees would chill the filing of civil rights cases. And one of the factors that the Court has considered in that regard is the relative wealth or poverty of the plaintiff. If the plaintiff, if the Champaigns, or now John Champaign, brought this action with the advice of counsel, and you now say that the claim was so insubstantial as to warrant an award of counsel fees, does the fault perhaps lie not with the client but with counsel? Your Honor, yes and no. I mean, the statute, the fee statute does reference an award against a party, not against the party's counsels. Some district courts have made fee awards joint in several. It certainly, if an attorney wishes to essentially admit that any fault is his or hers, that's within the attorney's rights. And the attorney can say, well, if there is going to be an award, make it joint in several. I'm a little troubled by the idea that you want to say to the general populace, don't bring a lawsuit, even though you're advised by an attorney that you have a reasonable claim, and find out post-hope that counsel's advice was just wildly off the mark and you're going to have to, the client's going to have to pay for it. This is in the context, as Judge Reinhart pointed it out, of civil rights jurisprudence. That doesn't trouble you? Your Honor, it doesn't, because the standard is high with regard to the merits of the underlying case. It's the case frivolous. And in this case, it's not. But wasn't it true here that it was only because of this lawsuit that it at least did come out that, in fact, there was no inspection when they said there was an inspection? In other words, it was in the course of discovering the suit that facts were discovered that at least as a factual matter lent some more bones to the complaint. Is that true? No, Your Honor, that's not true. I believe the reference is to Inspector Gates's declaration. Inspector Gates's declaration discussed further inspections in general. There were, in fact, further inspections following up on her inspection. But she – I read her deposition. She said early on in her deposition that she inspected on August 4th and later said, actually, I didn't inspect on August 4th. That's correct, Your Honor, but I don't – it wasn't out there before this case that she had inspected on August 4th. So what we had was essentially a witness's information coming out from a witness in the deposition, which the witness then, on further reflection, says, oh, you know what, I wasn't there on August 4th, I was there on these other days. And so, I mean, it's not information that was sort of out there and polluting the State court case before this lawsuit ever happened. Well, there is a document dated August 4th that says a fire and safety inspection was conducted at the above-referenced address by Priscilla S. Gates and my staff on August 4th. So there was a statement that she inspected on August 4th, which was later disproved by the discovery in this case. That is true, Your Honor, yes. Right. That's what I said. So the – to that degree, to the factual degree that there was some kind of shenanigans going on here, I mean, I understand there may be explanations for everything. But in putting a little bones on the notion that there was something irregular, at least, the lawsuit did demonstrate – put some bones on that. That doesn't make the lawsuit – Your Honor, I mean, yes, the lawsuit did demonstrate that there was a document out there that wasn't accurate as to the date of a third – a third re-inspection that didn't happen. But that's not the standard for whether a person is stating a factual or substantive due process. I would be sort of curious why you tell me that wasn't true when I first said it. Your Honor, it's a very big record in the case, and I – Well, if I know it, you should know it. That's correct, Your Honor, and I apologize for the error. So, Your Honors, the substantive due process right at issue in the case is – is the key question because that's what determines whether the claim is frivolous. In the Tudor-Saliba case, you had a similar situation where you had a plaintiff claiming a substantive due process right based on regulations where those regulations in fact conferred no substantive due process right. Here, we have essentially inspectors who have discretion to issue violations and to abate those violations. If it comes up those violations have been cured or were originally issued in error. That's all that happened here, and under California law, that doesn't create any entities maintaining a notice of violation. So, in this case, like in Tudor-Saliba, there – there is no underlying property right and there's no colorable argument for an underlying property right. This is a routine code violation matter. The system worked how it should. The violation was issued, it was cured, it was abated. And so, it's a situation where to say that there's going to be a property right here is essentially to create Federal supervision of local municipal code enforcement. That's not – I mean, that is so far from what the state of the law is or for what a reasonable argument could be made as to what the state of the law should be that this case was, in fact, frivolous and the fee award should be upheld. All right. I don't see any other questions. All right. Thank you, Your Honor. Thank you. Before you leave, let me ask you a question. We have, as you probably know, an excellent mediation program which brings about a lot of settlements. Your both sides here now, at this point, have something at stake. I wondered whether – and I'll ask the opposing counsel the same thing – would you be interested in seeing our mediation – our mediator and our program and discussing this, whether there's a possibility of resolution of this case? Your Honor, we did take a run at mediation before. I would have to consult with my clients, but it's something that we're always willing to consider. Thank you. Thank you. Before I lose track, let me ask you the same question. Your client now has not only the – has the possibility of winning, if you were to win your case. Your client has the possibility of losing at least $150,000 if the fee awards are upheld. Would you be interested in participating, if the other side were willing, in the mediation program? Your Honor, I'm always inclined to alternative dispute resolution, but of course it's up to my client. All right. Well, will you both notify us within the week whether you are willing to go to mediation? Certainly. Thank you. And what we will do is withhold our decision until we hear from you. So we won't submit the case at the moment. Thank you. All right. Go ahead. All right. As Justice Berzon correctly indicated – He's only a judge, Judge Berzon. Pardon me. As Judge Berzon correctly indicated, there were shenanigans, and I urge a – Well, I don't know if there were or weren't. I know that there were – things came out in the discovery that indicated that there were at least misstatements made. Fair enough. And to say it more correctly on my part, there's sufficient evidence that a factfinder could conclude shenanigans, among other things, occurred here. This is anything but an ordinary situation where notices of violation were issued and abated. I mean, in fact, they created – they invented new language to reverse it because it had an effect, a particular effect on the Unlawful Detainer case, because he had to – this tenant had to clear – he essentially had to go back in time to say that he never had done anything in the first place in order to win at Unlawful Detainer. And there's many, many instances in the record of things that indicate that a factfinder could find that there was fraud, malice, and deceit in this case, including – you know, the tenant's attorney, in fact, informally disclosed one of the city inspectors who inspected the property as an expert witness. Expert witnesses are ordinarily paid. I mean, that shows that we have evidence, whether it would bear out in trial or not, but we do have evidence that there was remuneration for a decision that happened here. And there are many other pieces of evidence in the record that indicate – for one thing, Inspector Gates went to the computer system and input the fact that I inspected on August the 4th. That's a violation of Penal Code 502 in California. It's a strictly enforced penal code. It's used by the Attorney General. It was just used by the Attorney General in California against Midas, because Midas was – She explained it. She said, I meant I went there. Pardon me? There was nobody there, but I did go out there. Well, she may have just said that, but then she also maintained it for another two years until the middle of the deposition when she had to go outside and speak with her attorney and come back and fess up that she'd been lying for two years. I mean, there's a lot wrong with what the city did. This is not – this is not an ordinary case of violations were abated. There was malice. And this is a colorable constitutional violation of the 14th Amendment. It's a due process violation for denial of access to the court for an unlawful detainer, which is absolutely 100 percent necessary in California. I urge you to consider the necessity of an unlawful detainer action for a landlord, an owner in San Francisco, who must remove a tenant who is creating a hazard, a life hazard for his neighbors. He could burn down the place. This is San Francisco, which has burned to the ground more than once. This city – this is an important issue to be able to remove somebody who is a danger. And both the access to the court is important – the right of access to the court is important so that such dangers can be prevented. And by the way, to characterize my clients as somehow deserving to – my time is up. To characterize my clients as somehow deserving to pay $150,000 in attorney's fees when they have a mountain of evidence and a colorable constitutional claim is outrageous, particularly given the fact that they're not wealthy. What they are is people who inherited a building from their parents, who were working class people, who owned the building for 55 years. And because you can't trust the government in San Francisco because it's corrupt, they got out of the landlord business in San Francisco, as many, many people do. It's a dangerous business being a landlord in San Francisco. This is – this is important material. This is worthy of a Federal court. This is a constitutional violation that I – Am I right that it was your firm that represented the Champagnes below? Well, it was not me personally, no. It was not my firm. We represented the Champagnes at the district court. Do you mean the unlawful detainer or the – or the Federal action? The commencement of the Federal action. Yes, yes. Initially, it was another firm, but we took over midway. And you thought there was a viable claim here? I believe – I believe there's absolutely a viable claim. I can't understand how it can't be seen plainly that there's a property right of access to – Well, I understand. I don't want to take up your time or the Court's time asking you to rehearse what the merit of the claim was. All right. Thank you, counsel. Thank you. Thank you, Your Honors. The case, it's argued, will not be submitted until we hear from the two of you within the week. All right. Thank you.
judges: Pollak, Reinhardt, Berzon